## William B. Howard v. Elias F. Gobel.

## Elias F. Gobel v. William B. Howard.

1. BURDEN OF PROOF—*Of Compensation Agreed Upon.*—In an action for work, labor and services performed, the party affirming that a certain compensation was agreed upon for such work, labor and services, has the burden of proving the same.

2. DAMAGES—*Work, Labor and Services—No Compensation Agreed Upon.*—In an action for work, labor and services, where the proof shows that no compensation was agreed upon, the plaintiff will, upon proof, etc., be entitled to a reasonable sum for the services performed.

**Bill for an Accounting.**—Appeal from the Superior Court of Cook County; the Hon. JOHN BARTON PAYNE, Judge, presiding. Heard in this court at the October term, 1895. Affirmed. Opinion filed February 11, 1896.

FLOWER, SMITH & MUSGRAVE, attorneys for William B. Howard.

WILLIAM W. GURLEY, attorney for Elias F. Gobel.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

On the 30th day of August, 1878, the Board of State House Commissioners of Indiana entered into a contract with Kanamacher & Denig to erect the State House at Indianapolis, for the sum of $1,509,621.69, in which contract the appellant, Howard, on the 4th of October, 1878, acquired a one-third interest, in consideration whereof he agreed to furnish one-third of the money required, and sureties upon a bond for $250,000, conditioned for the faithful performance of the contract, all of which agreements were performed by him.

On the 5th day of December, 1879, Howard purchased the one-third interest of Kanamacher in said contract, and on the 3d day of October, 1884, the remaining one-third interest of Denig therein, and from that time on until the completion of the State House, he became entitled to possess and hold all the rights, interests, etc., of the original parties to the contract, and was liable for all the obligations thereof.

In the spring of 1883, the work under contract was suspended, and not again resumed until October of the same year. At that time Howard had advanced from $250,000 to $300,000 in excess of the receipts from the State on account of the contract. The appellee, Gobel, was a surety

for $20,000, and Columbus R. Cummings of Chicago was a surety for $230,000 upon the bond given by Howard to the State, and during the period of such suspension they were notified that unless the work was resumed, the commissioners would abandon the contract and relet the work. Following such notice, interviews took place between Gobel and Cummings, the sureties, in regard to the situation, in which their liability was discussed, and as a result thereof, and with the approval of Cummings, Gobel went to Indianapolis three or four times during the months of August and September, 1883, for the purpose of inspecting and ascertaining the condition of the work and determining what course was advisable to pursue.

On the 3d of October, 1883, Howard and Gobel went to Indianapolis together, and Gobel then assumed charge and took possession of the work under written authority bearing date October 5, 1883, executed by Howard in his own name, as well as the partnership name of Kanamacher & Denig. This document authorized Gobel to take full possession and charge of the work, purchase all materials, employ and discharge all men, and make all sub-contracts, collect and disburse all moneys, keep the accounts, etc. On the same day Gobel opened books of account with himself as agent, under the supervision of one Holland, as bookkeeper, who was employed by him and remained in charge of said books during the whole period of Gobel's agency.

The State House was completed under Gobel's supervision and management, about the first of November, 1877, and turned over to the State. During the time of the completion of said work, and afterward, there was received from the State and from other sources in connection with said enterprise, the sum of $1,073,000 or thereabouts, as shown by the books of account kept in connection therewith, as aforesaid. Howard contends that during the continuance of the work Gobel received from outside contracts in the performance of which contracts the tools, machinery and material of Howard were used, a net profit of something over $11,000, and that including the same there was

realized a net profit, on the entire work performed or handled under the supervision of Gobel, of about $75,000. Gobel contends that previous to his employment there had been a loss of $287,000; that the loss on the entire contract was only $150,000, and that consequently a profit of $137,000 was made during his management.

Gobel retained for his services out of the moneys which came into his hands, the sum of $46,000, as shown by said books, being at the rate of $12,000 for the first sixteen months, and $1,000 a month for the balance of the time in which he was employed.

All of the moneys payable under contract or realized from other sources were collected and received by Gobel, except the last installment from the State, $86,000, which was paid to Howard. Howard filed a bill against Gobel, asking for an accounting. Gobel filed a cross-bill.

The court below entered, on the 17th day of July, 1895, a decree in the original suit, in favor of the appellant, Howard, and against the appellee, Gobel, for the sum of $504.25 with costs, and dismissed the cross-bill of Gobel for want of equity.

The cause was heard in the court below upon exceptions to the master's report, which report was that Gobel was indebted to Howard in the sum of $10,927.09, and that Howard was entitled to a decree for that sum, and recommended that the cross-bill of Gobel should be dismissed for want of equity. Both parties excepted to the master's report, some of which exceptions were sustained by the court upon a final hearing, and others overruled, resulting in the decree above referred to. Both parties excepted to the entry of such decree and prayed for and have perfected their appeals to this court.

The controversy in this case arises out of the disagreement between the parties, as to the compensation Gobel is entitled to receive for his services, as the agent of Howard.

The latter claims that Gobel agreed to render his services for a compensation of $5,000 per year, while Gobel insists that the contract was that he should have a reasonable compensation; that $1,000 per month is reasonable, and that

in addition thereto he was to have one-third of any profit that might be realized out of the work after he took charge; and in ascertaining profits the unpaid percentages retained by the State for previous work done, as well as the tools, machinery and plant then on hand, were to be included.

The questions are:

1.   What was the contract?

2.   If the contract be as Gobel claims, what are his services reasonably worth?

3.   What amount should the recovery be, based upon the finding as to what the contract was?

By stipulation an expert accountant testified, substantially, as follows:

First.   If the court finds that Gobel agreed to a salary of $5,000 per year, and had no interest in profits, Howard is entitled to a decree against him for $25,902.59.

Second.   If the contract was for a reasonable compensation (and if $12,000 per year be reasonable) and in addition thereto, one-third of the profits, including tools, percentages, etc., then Gobel is entitled to a decree against Howard for $24,577.52.

Third.   If the contract was as last above, but excluding the tools, percentages, etc., then Gobel is entitled to a decree for $14,431.25.

Fourth.   If the contract was that Gobel should have a salary of $5,000, and one-third of profits, as claimed by him, then Howard is entitled to a decree against him of $780.82.

Fifth.   If Gobel was to have a salary of $5,000, and one-third of profits, excluding tools, percentages, etc., then Howard is entitled to a decree of $10,927.09.

That Gobel was employed to, and did, superintend the completion of the work, is undisputed.

Each party insists that the compensation Gobel was to receive was agreed upon, but there is a wide difference in the respective statements as to what the agreement for compensation was.   Now, unless the minds of the parties met as to the amount of compensation, there was no agreement as to it.   The party that affirms that a certain compensation

was agreed to, holds the affirmative, and the burden is on him to show what compensation was contracted for. Each occupies the position of being bound to prove his contention in this regard. The evidence as to this matter is variant and irreconcilable. We are of the opinion, as found by the court below, that the evidence fails to show that there was any meeting of the minds of the parties, any agreement as to what the compensation of Gobel should be.

Such being the case, he is entitled to a reasonable sum for the service he performed. This sum the court below has found to be at the rate of $12,000 per year; in which finding we concur.

This finding necessarily excludes all consideration of profits whether resulting from losses recuperated, profits on the work done under the superintendence of Gobel, or value of tools and materials left.

The decree of the Superior Court is therefore affirmed.